# Exhibit A



# EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") is entered into and effective the 1st day of August 2012, by and between Amin Khajehnejad ("Employee"), and 3 Red Trading, LLC, ("3Red"), (collectively, the "Parties").

### ARTICLE I. ENGAGEMENT

**1.01** **Employment.** 3Red hereby retains the services of Employee, and Employee hereby agrees to provide services on the terms and conditions hereinafter set forth, both parties hereto expressly revoking any and all prior employment agreements to which they may be mutually subject.

**1.02** **Duties of Employee.** 3Red shall employ Employee as a Quantitative Researcher.

(a) Employee's responsibilities shall include, but not be limited to, Algorithmic Development, Programming, Statistical Analysis, Trading, Quantitative Research and other Market related duties.

(b) 3Red may change Employee's title, reporting, duties and responsibilities from time to time in its sole discretion. Changes in or additions to Employee's duties hereunder shall not be accompanied by additional compensation unless expressly agreed to by 3Red.

(c) Employee shall be required to devote all of his time to the business of 3Red in accordance with the instructions, direction, and control of 3Red.

(f) <u>Exclusive Duty to the Company</u>. Employee shall have an exclusive duty to 3Red. Employee shall be required to devote all of his time to the business of 3Red in accordance with the instructions, direction, policies, and control of 3Red. All other direct or indirect business interests, active investments, employment, or consulting activities must be submitted in writing to the Managing Members of 3Red for approval. Any passive investments that are possible conflicts of interest with 3Red, such as commodity pool operators, commodity trading advisors, hedge funds, etc. must be submitted in writing to the Managing Members of 3Red for approval. In the event that Employee violates, as determined by the Managing Members, the provisions of this Section 1.02 (f), Employee shall forfeit all past, pending, and future distributions and allocations and may be required to withdraw from 3Red.

**1.03** **Term.** The term of the Agreement shall commence on the **1st day of August 2012** (the "Start Date"), and shall continue for a period of twelve (12) months thereafter, subject to the following:

3 Red Trading LLC – Employment Agreement
AK Khajehnejad    3Red                                                                Page 1 of 7

(a) Employee may terminate the relationship created by this Agreement, with or without cause, upon thirty, (30) days written notice to the managing members of 3Red. 3Red may terminate the relationship created by this Agreement at any time, with or without cause, with written notice to Employee; however, the obligations of this Agreement, including but not limited to Article II and III herein, shall continue in full force and effect upon the terms stated; and

(b) Subject to the provisions of Paragraph 1.03(a), upon the expiration of the original term of this Agreement, the Agreement shall be renewed with all its terms and conditions for an additional term of twelve (12) months and will remain in form indefinitely unless, written notice of termination is delivered, by either party to the other party. As stated above, in the event of termination, the obligations of this Agreement, including but not limited to Article II and III herein, shall continue in full force and effect upon the terms stated.

1.04 **Trading.** All trades by Employee shall be made through and as a part of 3Red Trading Operations. Profits and Losses shall be determined at the end of each calendar month (and upon termination as provided in this Agreement). All positions shall be marked to market, as determined by 3Red in its sole discretion, it being understood and agreed that settlement prices are not necessarily presumed to be evidence of current, realistic market values where other circumstances, including, without limitation, such factors as market liquidity, volume, size of position and dollar size, warrant other marks.

1.05 **Compensation and Benefits.** In consideration for the services to be rendered by the Employee hereunder, 3Red shall provide the following salary and benefits to Employee during each year of the term of this Agreement:

(a) **Salary.** Basic annual salary of One Hundred Twenty Thousand dollars and No/100 Dollars ($120,000.00) payable in bi-weekly prorated installments beginning the date Employee begins work for 3Red.

(b) **Discretionary Bonus.**

(i) **Definitions.** An annual Discretionay Bonus may be awarded Employee by 3Red, in its sole discretion, by the Managing Members of 3Red.

(c) **Immigration and Work Status.** 3Red will provide all necessary documentation and support to ensure that Employee remains legal to work in the US in whatever capacity determined best by the Parties.

1.06 **Termination for Cause.** In addition to the parties' rights to terminate this Agreement without cause pursuant to Paragraph 1.03(a) above, 3Red shall be entitled at its option to terminate this Agreement at any time for any of the following reasons:

(a) The conviction of Employee of a felony;

(b) Employee's fraud, misappropriation, embezzlement, theft, or the like;

(c) Employee's failure to comply with reasonable instructions or directives of 3Red's Management or with 3Red's policies and procedures as they may exist from time to time;

(d) Chronic absenteeism of Employee;

(e) Employee's use of controlled substances;

(f) Employee's failure to meet goals;

(g) Employee's failure to adequately perform his responsibilities with 3Red; or

(h) Upon 3Red 's determination that the work available is insufficient to warrant continued employment.

The termination of Employee pursuant to this Paragraph 1.06 shall not constitute a breach of this Agreement by 3Red. In the event of termination of Employee pursuant to this Paragraph 1.06, Employee shall be entitled to the prorated portion of his compensation up to the date of termination. As stated above, in the event of termination, the obligations of this Agreement, including but not limited to Article II and III herein, shall continue in full force and effect upon the terms stated.

**1.07** **Exit Interview.** The parties agree to hold an exit interview on the last day of Employee's employment with 3Red, or on such a date as the parties agree, at a place determined by 3Red. At the exit interview, Employee shall return to 3Red all material supplied him by 3Red and all materials developed by him in the course of his employment with 3Red, including employment manuals, books, records, documents, computer programs, software, and all other proprietary information. Employee shall also return any computer, computer programs and other communication devices provided to him by 3Red. All items shall be returned to 3Red in the condition in which they were given the Employee, normal wear and tear excepted.

## ARTICLE II. RESTRICTIVE COVENANT

**2.01** The terms and conditions of the Non Competition Agreement mutually executed by the parties are incorporated herein.

## ARTICLE III. CONFIDENTIALITY

**3.01** (a) Employee recognizes that he may acquire certain knowledge, information, and property during his employment relating to the business, developments, activities or products of 3Red or the business affairs of any individual or firm doing business with 3Red, such as but not limited to, trading methodology, programming, statistical analysis, algorithmic development, individual trader performance, trading performance, trading positions, commission rates, products traded, vendor relationships and certain trading strategies, and Employee hereby agrees that any and all such knowledge, information, and property that may be obtained or is obtained by him in the course of his retention hereunder and his employment at 3Red are and will forever remain the valuable property of 3Red and shall be forever held inviolate by Employee, concealed from any competitor and all other persons, and that Employee will not impart such knowledge, information, and property acquired by him to any person, firm, or company.

(b) Employee further agrees that everything developed and created by Employee in the course of his retention hereunder and his employment at 3Red, such as, but not limited to, trading methodology, programs, statistical analysis, algorithms, trading positions, commission rates, products traded, vender relationships and certain trading strategies, is and will forever remain the valuable property of 3Red and shall be forever held inviolate by Employee, concealed from any competitor and all other persons, and that Employee will not impart such knowledge, information, or property, developed by Employee while working at 3Red to any person, firm or company. In addition, Employee acknowledges that should his employment with 3Red terminate for any reason, he will not have any right to take with him and use such knowledge, information, and property developed and created by Employee in the course of his retention hereunder and his employment at 3Red unless Employee receives the express written consent of 3Red's Managing Members. The decision regarding whether, after Employee's employment at 3Red is terminated, Employee can take with him and use such knowledge, information, and property developed and created by Employee in the course of his retention hereunder and his employment at 3Red is at 3Red's Managing Members' sole discretion.

(c) 3Red acknowledges that Employee may bring with him certain knowledge, information, and property relating to business, development, activities, and products, such as, but not limited to, trading methodology, programming, software, statistical analysis, algorithmic development, individual trader performance, trading performance, trading positions, commission rates, products traded, vender relationships and certain trading strategies, and 3Red hereby agrees that any and all such knowledge, information, and property that Employee acquired before his retention hereunder and acquired before the commencement of Employee's employment at 3Red, is the valuable property of Employee and shall be forever held inviolate by 3Red, concealed from any competitor and all other persons, and that 3Red will not impart such knowledge, information, or property acquired by 3Red to any person, firm, or company. In addition, 3Red acknowledges that should Employee choose to terminate the employment agreement with 3Red, he will have full rights to take with him and use such knowledge, information, and property brought by Employee and otherwise acquired by Employee before working at 3Red.

**3.02 Breach.** The parties both recognize and acknowledge that the services of Employee are special and unique, and that, by reason of the relationship created by this Agreement, Employee is obtaining access to confidential information and other material aforesaid, including any computer and computer software that is provided by 3Red, which must be returned at the time of termination. Therefore, Employee expressly agrees that any breach or threatened breach of the provisions of either this Agreement or any Non Competition Agreement executed by the parties will cause 3Red serious, immediate, and irreparable injury, and shall entitle 3Red, in addition to any other legal remedies available to it, to apply to any court for an injunction, temporary and/or permanent, to prevent any violation of this Agreement or any Non Competition Agreement executed by the parties, and Employee recognizes, acknowledges, and concedes that such injunction would, in those circumstances, be necessary to protect 3Red's interest.

**3.03 Extension.** In the event Employee violates the provisions of this Agreement and/or any Non Competition Agreement executed by the parties, Employee agrees that the terms of this Agreement and the terms of any Non Competition Agreement executed by the parties shall be extended for another twelve (12) months.

## ARTICLE IV. GENERAL PROVISIONS

**4.01 Conflict of Interest.** Employee represents and warrants that he is not now under any legal or contractual obligation that would conflict in any manner whatsoever with the obligations and duties by him herein undertaken and that the execution of this Agreement will not breach any agreement to which Employee is presently a party. 3Red shall not be responsible for any legal fees, expenses or damages incurred by Employee if the execution or performance of this Agreement or Employee's employment by 3Red violates any other agreement to which Employee is a party. In the event that Employee's former Employer sues Employee for becoming an employee at 3Red, 3Red agrees to pay the attorney fees and legal costs incurred by Employee in defending said action, unless 3Red's Managing Members determine at their sole discretion that said attorney fees and legal costs are incurred as a result of a willful breach by Employee of Employee's former employment agreement or as a result of other willful action by Employee.

**4.02 Governing Law and Venue.** This Agreement will be governed and construed in accordance with the laws of the State of Illinois without giving effect to principles of conflict of laws. The parties agree that any suit filed in connection with this Agreement shall be filed in the District Court for the Northern District of Illinois or in Illinois State Court in Cook County, Illinois.

**4.03 Enforcement of Rights.** Upon the occurrence of a breach of the covenants contained in the foregoing paragraphs, Employee agrees that, in addition to injunctive relief, 3Red shall be entitled to damages. If 3Red prevails, Employee shall pay the reasonable attorneys' fees and costs incurred by 3Red in connection with the enforcement action.

**4.04 Litigation and Regulatory Cooperation.** During and after his employment by 3Red, Employee shall cooperate fully with 3Red in the defense or prosecution of any claims or

actions now in existence or which may be brought in the future against or on behalf of 3Red which relate to events or occurrences that transpired during his employment. Employee's full cooperation in connection with such claims or actions shall include being available to meet with counsel to prepare for discovery or trial and to act as a witness on behalf of 3Red at mutually convenient times. During and after his employment by 3Red, Employee also shall cooperate fully with 3Red in connection with any investigation or review of any federal, state or local regulatory authority if any such investigation or review relates to events or occurrences that transpired during his employment. 3Red shall reimburse Employee for any reasonable transportation expenses in connection with Employee's performance of obligations under this Paragraph 4.04

4.05 **Severability; Waiver.** Whenever possible, each provision of the Agreement shall be interpreted in such a manner as to be valid under applicable Illinois law, but if any provision of the Agreement is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force only if the essential provisions of the Agreement for each party remain valid, binding, and enforceable. The waiver by either party of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

4.06 **Miscellaneous.** Time is of the essence in this Agreement. Wherever necessary or proper herein, the singular imports the plural and the plural the singular, and the use of the male pronoun imports the use of the female, as appropriate. Headings used in this Agreement are for reference purposes only and in no way define or limit the scope of such section or in any way, affect this Agreement.

4.07 **Entire Agreement.** This Agreement sets forth the entire, final, and exclusive agreement between Employee and 3Red. All prior negotiations and agreements, whether oral or written, between Employee and 3Red are incorporated into this Agreement. This Agreement may not be changed, modified, or altered except by an agreement in writing, signed by Employee and 3Red. The terms of this Agreement are contractual and not a mere recital.

4.08 **Counterparts.** This Agreement may be executed in counterparts, and all such counterparts together shall constitute the entire agreement between Employee and 3Red. A scanned or faxed copy of this Agreement will be deemed to be the same as an original.

4.09 **Advice of Counsel.** The Parties represent and acknowledge that they have had the opportunity to consult with legal counsel or other advisors in connection with this Agreement, and that they have relied upon the advice of such counsel or advisors, if any, in agreeing to the terms of this Agreement. The Parties represent and agree that they fully understand and consent to the terms of this Agreement and understand the consequences of signing this Agreement. No presumption in favor of or against any party shall apply in interpreting the terms of this Agreement.

4.10 **Arbitration.** All claims or controversies arising from the provisions of this Agreement shall be arbitrated under the rules of the exchange on which 3Red principally trades (or

traded) during the term of this Agreement, or if said exchange declines to accept jurisdiction, under the rules of the American Arbitration Association or an arbitration facility provided by any other exchange of which the 3Red is a member. The parties hereby agree to waive the right to sue each other in court, including the right to a trial by jury, except insofar as they sue each other in court for preliminary injunctive relief before a court of equity and except as provided by the rules of the arbitration forum in which a claim is filed. The rules of the arbitration forum, in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.

**4.11** **Notices.** Notices provided herein are to be given to the parties at the following addresses:

Amin Khajehnejad:

3 Red Trading LLC:
333 West Wacker, 1650
Chicago, IL 60606
312.981.8300

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed and their seals to be affixed hereto.

**EMPLOYEE**

By: _Amin Khajehnejad_

Print Name: _M. Amin Khajehnejad_

Date: _8/14/2012_

**3 Red Trading LLC**

By: _[signature]_

Print Name: Edwin Johnson

Title: Chief Operating Officer

Date: