# Exhibit B



# NONCOMPETITION AGREEMENT

This Noncompetition Agreement ("Agreement") is entered into and effective as of the 1st day of August 2012, by and between **Amin Khajehnejad** ("Employee"), and **3 Red Trading LLC** ("Company"), (collectively, the "Parties"). For purposes of this Agreement the term "Company" shall be deemed to include any successor organization and any current or future affiliated companies.

WHEREAS, the Company is engaged in, amount other things, the business of trading certain products such as, but not limited to, equities, options, futures, securities, energy, electricity, currency and related financial products, on a proprietary basis.

WHEREAS, the Company trades on exchanges and with counterparties located through the world, and due to the nature of the business, physical presence on the exchange is not necessary.

WHEREAS, the Company wishes to retain the Employee as an Employee of the Company and Employee desires to be so retained on the terms and conditions hereinafter set forth.

NOW THEREFORE, in consideration of (i) the covenants and promises contained herein, (ii) Employee's employment by the Company, and (iii) the compensation and benefits received by Employee from the Company, the receipt and sufficiency of which is acknowledged, the parties, intending to be legally bound, agree as follows:

1) RECITALS

   a) The Recitals set forth above are hereby incorporated into this Agreement.

2) **COVENANT NOT TO COMPETE**

   a) **Employee agrees to refrain at all times from directly or indirectly engaging in Competitive Activity during employment with the Company and during the Non-Compete Period.**

   i) **"Non-Compete Period"** means the zero (0) to twelve (12) month period following the termination of employment with the Company as elected by the Company within 10 days following the end of employment.

   ii) **"Competitive Activity"** includes engaging in any of the following activities with or for the benefit of a Competitive Entity.

      a) Becoming an employee in a similar capacity, providing similar services, or with similar responsibilities to the services provided by Employee to the Company; or

      b) Becoming an advisor or consultant in a similar capacity, providing similar services, or with similar responsibilities to the services provided by Employee to the Company; or

      c) Directly or indirectly utilizing or developing quantitative analytics which are based on information that is proprietary to the Company and which was either utilized or developed while employee was employed by the Company;

      d) Directly or indirectly overseeing one or more individuals that utilize or develop quantitative analytics which are based on information that is proprietary to the Company and which was utilized or developed while Employee was employed by the Company; or

      e) Directly or indirectly becoming a partner or principal; or directly or indirectly forming, or acquiring greater than 5% equity, voting, revenue, income, profit, loss or other economic interest in a competitive Entity.

(iii) For purposes of this Agreement,

      a) "based upon" means "substantially similar to" or "derived from."

      b) "information that is proprietary to the Company" includes, without limitation, information covered by any confidentiality agreement between Employee and the Company, and also any information, written or not, which by its nature discloses the Company's business, plans, strategies, or metrics.

(b)     **"Competitive Entity"** shall specifically include, but is not limited to, Allston Trading, LLC, Citadel, DRW Holdings, LLC, Getco (Global Electronic Trading Company), Tower Research Capital, LLC, Lime Brokerage, LLC, EWT Trading, LLC, QuantLab Financial, LLC, Octeg, LLC, Gelber Group, LLC, JED Capital, LLC, Tradebot Systems, Inc., ATD, Sun Trading LLC, Optiver, IAT, Tibra Capital, Swift Trade/Biremis Corp, Infinium Capital Management, Timber Hill LLC, Ronin Capital LLC, EWT LLC, Fat Trading, IMC Group, Breakwater Trading, LLC, or associated merged companies including but not limited to Peak 6 and Breakwater Capital, LLC, or any affiliate of the above. "Competitive Entity" also means any business that:

(i) Engages in any of the trading strategies or any other business activities identical or similar to any of those engaged in by the Company; or

(ii) Engages in high frequency algorithmic transactions in any way involving any electronically tradeable product or commodity through any exchange, electronic trading venue or platform in which the Company engaged during the 12 months preceding the termination of employment or in which the Company has plans to engage at the termination of employment; or

(iii) Owns or controls a significant interest in any entity that engages in any of the trading strategies or any other business activities identical or similar to those engaged in by the Company.

(c) **Non-Compete Period Compensation**

(i) If the Employee voluntarily terminates the employment relationship or if the Company decides to terminate the employment relationship, the Company agrees to compensate Employee during the Non-Compete Period with Employee's annual draw as provided in Section 1.05 of his Employment Agreement, provided Employee does not engage in any Competitive Activity for the duration for the Restricted Period.

(ii) Any non-compete period payment will be made on a semi-monthly basis consistent with the Company's payroll schedule. All payments will be subject to applicable taxes. If this Agreement is determined by a court to be void or unenforceable in whole or in part, or is breached by Employee, the court may impose upon Employee such restrictions of time and area as the court shall find reasonable. That notwithstanding, any obligation of the Company to make Restricted Period Payments (other than those required by law) will terminate. Any remaining provisions of this Agreement shall be unaffected by such modification imposed by the Court.

(iii) If Employee is enrolled in health, dental and/or vision coverage at the time of separation the Company will continue to provide the same or similar coverage for the employee during the Non-Compete Period so long as the Company still has said benefit plans. Employee will be responsible for the employee's contribution and such amount will be deducted from the Non-Compete Period Compensation.

3) **NON-SOLICITATION OF EMPLOYEES, AGENTS, OR SALES REPRESENTATIVES.** During his employment by 3 Red Trading LLC, and for a period of one (1) year thereafter, Employee will not hire or induce, attempt to induce or in any way assist or act in concert with any other person or organization in hiring, inducing or attempting to induce any employee, agent, or sales

representative of 3 Red Trading LLC to terminate such employee's, agent's, or sales representative's relationship with 3 Red Trading LLC.

4) **NON-DISPARAGMENT.** During Employee's employment with the Company, and following the termination of employment with the Company for any reason, whether with or without cause, Employee shall not make any oral or written statement to any third party that disparages, defames, or reflects adversely upon the Company or any of its principals, officers, employees or services.

5) **NOTICE OF FUTURE EMPLOYMENT.** For a period of twelve (12) months after the expiration of the Non-Compete Period, Employee agrees to notify the Company a minimum of three (3) days prior to beginning employment with a new employer. Employee will provide the Company with the name and address of the new employer and a general description of new job duties and responsibilities.

6) **NOTICE TO FUTURE EMPLOYERS.** During the 24 month period following the end of employment, Employee will notify any subsequent employer of their obligations under this Agreement prior to commencing employment.

7) **REMEDY.** Employee recognizes and understands that a violation of any agreements or covenants contained in this Agreement would constitute immediate and irreparable injury to the Company and there may be no adequate remedy at law for such breach. In the event of a breach or a threatened breach of any of the terms of this Agreement the Company shall be entitled to seek enforcement of this Agreement in a court of competent jurisdiction by means of a decree of specific performance, an injunction, and any other form of equitable relief, without the necessity of posting bond. In addition, the period of noncompetition shall be extended by a period of time equal to that period beginning when such violation commenced and ending when the activities constituting such violations shall have terminated. This provision does not replace or limit any other remedies the company may have at law or in equity, including monetary damages.

    (a) Each affiliate of 3 Red Trading LLC is a third party beneficiary of this Agreement and may enforce 3 Red Trading LLC's rights under this Agreement.

8) **REASONABLE AND NECESSARY.** Employee understands that the provisions of this agreement may limit Employee's ability to earn a livelihood in an identical or similar business for a period of time. Employee agrees that the scope and duration of the restrictions and limitations described in this Agreement are reasonable and necessary to protect the legitimate business interests of the Company. Employee further acknowledges that these restrictions apply regardless of the reason for terminating the employment or consultant relationship.

9) **AT-WILL EMPLOYEMNT.** Employee and the Company understand and acknowledge that this Agreement does not alter the at-will employment

relationship, as defined under applicable law, meaning that either party may terminate the relationship at any time for any reason or no reason.

10) **GENERAL PROVISIONS.**

    a. **Notice.** Any notice, demand, or communication required or permitted to be given by any provision of this Agreement shall be deemed to have been sufficiently given or served for all purposes if delivered personally to the party or to an executive officer of the party to whom the same is directed, by a recognized overnight delivery service providing overnight delivery to the location of the addressee or, by registered or certified mail, postage and charges prepaid, addressed to the Employee's and/or Company's address, as appropriate, which is set forth in this Agreement. Except as otherwise provided herein, any such notice shall be deemed to be given when delivered, if personally delivered, the day after deposit with a recognized overnight delivery service with all charges prepaid or two business days after the date on which the same was deposited in the United States mail, addressed and sent as aforesaid.

    b. **Governing Law.** This Agreement and its interpretation shall be governed exclusively by its terms and by the laws of the State of Illinois, and the Securities Act, without giving effect to the principles of conflict of laws.

    c. **Entire Agreement.** This Agreement and the Employment Agreement executed by the Parties, those documents expressly referred to herein and other documents of even date herewith, embody the complete agreement and understanding among the parties and supersede and preempt any prior understandings, agreements, or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way.

    d. **Amendments and modification.** No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by both parties. Any subsequent change or changes in Employee's duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.

    e. **Construction.** Whenever the singular number is used in this Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

    f. **Headings.** The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision hereof.

g. **Rights and Remedies Cumulative.** The rights and remedies provided by this Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any other remedy. Said rights and remedies are given in addition to any other legal rights the parties may have.

h. **Severability and Enforcement**. If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

i. **Survival**. The provisions of this Agreement shall survive the termination of the Relationship and the assignment of this Agreement by the Company to any successor in interest or other assignee.

j. **Arbitration.** All claims or controversies arising from the provisions of this Agreement shall be arbitrated under the rules of the exchange on which 3 Red Trading LLC principally trades (or traded) during the term of this Agreement, or if said exchange declines to accept jurisdiction, under the rules of the American Arbitration Association or an arbitration facility provided by any other exchange of which the 3 Red Trading LLC is a member. The parties hereby agree to waive the right to sue each other in court, including the right to a trial by jury, except insofar as they sue each other in court for preliminary injunctive relief before a court of equity and except as provided by the rules of the arbitration forum in which a claim is filed. The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.

k. **Nondisclosure Obligations.** No provision of this Agreement shall modify or supersede any of Employee's obligations under any Invention Assignment and/or Non-Disclosure Agreement executed at any time by Employee (collectively, "Non-Disclosure Agreements"). In the event of a conflict between this Agreement and any Non-Disclosure Agreement, the terms of the Non-Disclosure Agreement shall control.


IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed and their seals to be affixed hereto.

**EMPLOYEE**

By: *[signature]*

Print Name: M. Amin Khojehnejad

Date: 8/14/2012

**3 Red Trading LLC**

By: *[signature]*

Title: Chief Operating Officer

Date: 8/14/12